## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2016, 6:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erica Lupkin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 31, 2016

Court of Appeals Case No.
02A03-1605-CR-1050

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D04-1510-F6-972

**Barnes, Judge.**

## Case Summary

Erica Lupkin appeals her conviction for Level 6 felony invasion of privacy. We affirm.

## Issue

The sole issue is whether there is sufficient evidence to rebut Lupkin's defense of mistake of fact and to support her conviction.

## Facts

The evidence most favorable to the conviction is that Lupkin has been in a long-term relationship with Owen Higgins; the couple have three children together. On January 9, 2015, Lupkin pled guilty to Class A misdemeanor invasion of privacy by violating a protective order in favor of Higgins. Lupkin was sentenced to a term of 365 days suspended to probation. On that same date, a no contact order was issued as a condition of Lupkin's probation, prohibiting her from having any contact with Higgins. The no contact order, which Lupkin signed, stated that it was effective until January 8, 2016.

On October 8, 2015, Fort Wayne Police Officer Charles Volz pulled over a moped being driven by Higgins because he was carrying a passenger, and the license plate for the moped indicated that he could not carry any passengers. Lupkin was the passenger. However, Lupkin initially told Officer Volz that her name was Casey Lupkin, which is Lupkin's sister. After looking up Casey Lupkin's information, Officer Volz noticed that the picture for Casey did not seem to match Lupkin. He then learned Lupkin's true identity and discovered

the no contact order against her. Officer Volz discussed the no contact order with Higgins, who acknowledged that "he was not supposed to be with her" but that he did not want the no contact order to be in place any longer. Tr. p. 94.

[5] The State charged Lupkin with Level 6 felony invasion of privacy; it also sought to revoke her probation for the previous Class A misdemeanor invasion of privacy conviction. On October 23, 2015, Lupkin admitted to violating probation, and it was revoked. The no contact order also was dismissed on that date.

[6] A jury trial was held on the felony charge on March 22, 2016. During her testimony, Lupkin asserted that she thought the no contact order was no longer in effect on October 8, 2015. She testified that she returned to court sometime in February or March 2015 to pay fees associated with her case and was informed the no contract order would be dismissed. She also testified that she was given a pink paper to that effect, signed by a judge, but that paper was not introduced into evidence. The jury found Lupkin guilty as charged, and the trial court entered judgment of conviction accordingly. She now appeals.

## Analysis

[7] Lupkin's sole claim on appeal is that there is insufficient evidence to support her conviction—specifically, that the State failed to rebut her mistake of fact defense. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences therefrom that support the verdict. *Sallee v. State*, 51 N.E.3d 130, 133

(Ind. 2016). We may not assess witness credibility or weigh the evidence, as those are roles exclusively for the fact-finder. *Id.* The evidence need not overcome every reasonable hypothesis of innocence, so long as an inference may reasonably be drawn from the evidence that supports the verdict. *Id.*

[8] A person who knowingly or intentionally violates a no contact order issued as a condition of probation and who has a prior conviction for invasion of privacy commits Level 6 invasion of privacy. Ind. Code § 35-46-1-15.1(6). Mistake of fact as to the existence of a no contact order is recognized as a defense to a charge of invasion of privacy. *Chavers v. State*, 991 N.E.2d 148, 151 (Ind. Ct. App. 2013), *trans. denied*. The mistake of fact defense is codified by Indiana Code Section 35-41-3-7, which provides, "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense."

[9] When the State has made a prima facie case of guilt, the defendant bears the burden of establishing an evidentiary predicate of his or her mistaken belief of fact. *Chavers*, 991 N.E.2d at 151. The defendant must satisfy three elements in order to be successful on a claim of mistake of fact: "'(1) that the mistake be honest and reasonable; (2) that the mistake be about a matter of fact; and (3) that the mistake negate the culpability required to commit the crime.'" *Id.* (quoting *Potter v. State*, 684 N.E.2d 1127, 1135 (Ind. 1997)). The State, however, bears the ultimate burden of disproving beyond a reasonable doubt a defense of mistake of fact. *Id.* at 151-52. "The State may meet its burden by

directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief." *Id.* at 152.

[10]     Here, the evidence established that Lupkin signed and thus knew of the no contact order, which had a clearly-stated expiration date of January 8, 2016. Although Lupkin claimed that she thought the no contact order had been dissolved sometime in February or March 2013, she presented no documentary evidence to that effect. The CCS for the underlying case in which the order was issued, which was introduced into evidence at trial, does not include any notation that the order was dissolved until October 23, 2015, when Lupkin's probation for the conviction was revoked. Although Lupkin claimed she was given a pink piece of paper signed by a judge stating that the order had been dissolved and that she had given that paper to her attorneys, that alleged paper was not introduced into evidence. When Officer Volz spoke to Higgins about the no contact order, he acknowledged its existence and that he was not supposed to have contact with Lupkin, though he wanted the order dissolved.[1] Finally, and perhaps most crucially, Lupkin initially tried to pass herself off as her sister Casey to Officer Volz. Providing a false name to law enforcement is "evidence of consciousness of guilt." *Bennett v. State*, 883 N.E.2d 888, 892 (Ind. Ct. App. 2008), *trans. denied*. It would have been reasonable for the jury to infer

---

[1] Higgins's apparent consent to Lupkin's violation of the no contact order is irrelevant for purposes of determining her guilt for invasion of privacy. *See Dixon v. State*, 869 N.E.2d 516, 520–21 (Ind. Ct. App. 2007).

that Lupkin was attempting to evade detection by Officer Volz because she knew of the valid existence of the no contact order. Lupkin essentially is arguing that the jury was required to accept her self-serving testimony about the dismissal of the no contact order at face value, with no documentation to back up that testimony. The law is clear, however, that a jury "is not required to believe every part of a defendant's testimony." *Edgecomb v. State*, 673 N.E.2d 1185, 1194 (Ind. 1996).

[11] Both Lupkin and the State direct us to this court's opinion in *Chavers* as supporting either reversal or affirmance of Lupkin's conviction. In that case, there was first a civil protective order issued against the defendant, and subsequently a no contact order was issued against him in a different court as a condition of probation for a confinement conviction. The probationary no contact order stated that it could be dissolved at the victim's request. The victim did in fact request that the civil protective order be dismissed, and it was, but the separate no contact order from the other court was not dismissed. The defendant was advised by his probation officer during a meeting that the no contact order was still in effect, but the defendant later that same day went to the victim's home in reliance upon the victim's statement that he was now allowed to come to her house. The defendant was convicted of invasion of privacy for violating the no contact order, and this court affirmed, rejecting the defendant's claim that he had proven his mistake of fact defense and lacked the requisite intent to commit invasion of privacy. *See Chavers*, 991 N.E.2d at 153-54.

[12] Lupkin notes that there was a dissent in *Chavers* and that there was evidence in that case that the defendant was told by a probation officer on the day of the offense that the no contact order was still in effect, while there was no evidence of such a contemporaneous communication to Lupkin. However, we believe the facts here overall are much more conclusive in favor of affirming Lupkin's conviction. It was undisputed in *Chavers* that there could have been some confusion over the fact that there were two separate protective or no contact orders, that the victim was permitted to seek dismissal of the no contact order, that the victim did in fact obtain dismissal of the civil protective order, and that she told the defendant it was permissible for him to visit her. *See id.* at 153. Here, by contrast, there is no evidence of overlapping protective or no contact orders and, consequently, no evidence of possible confusion over one of them being dismissed but not the other. The no contact order did not contain a provision allowing for Higgins to seek its dismissal, unlike in *Chavers*. And, the evidence most favorable to the conviction is that, although Higgins consented to having contact with Lupkin, he was aware of the no contact order's continuing validity. In sum, we conclude there is sufficient evidence from which the jury could have found that Lupkin did not make an honest and reasonable mistake of fact about the no contact order's existence when she interacted with Higgins.

# Conclusion

[13] There is sufficient evidence to sustain Lupkin's conviction for Level 6 felony invasion of privacy and for the jury to have rejected her mistake of fact defense. We affirm.

[14] Affirmed.

Riley, J., and Bailey, J., concur.